### WELCH *v.* OLD DOMINION MIN. & RY. CO.

*(Supreme Court, General Term, First Department. May 16, 1890.)*

**1. ATTORNEY AND CLIENT—SERVICES—SCOPE OF EMPLOYMENT.**
    After an attempted organization in New York in 1886, under a paper purporting to be an assignment of a charter of incorporation granted in 1882 by the legislature of Virginia, under the laws of which state a corporation must be organized within two years after the charter is granted, else the grant will be absolutely void, plaintiff was employed as counsel by persons who desired to put the company into operation, if the charter were valid, to give his opinion "upon the validity of the first charter of our company, and every act or event that has happened, or that may hereafter occur, by legislation which has or may affect it." Plaintiff, after having discovered that the original incorporators had organized in Virginia under the charter in 1883, and had changed its name in 1884, since when it had continuously prosecuted its business, went to Virginia, and procured an act of legislature changing the name of the company given by the act of 1884. *Held,* that plaintiff could not recover for service in procuring such change of name.

**2. CORPORATIONS—ASSIGNMENT OF CHARTER—VOID ORGANIZATION.**
    A charter of incorporation is not assignable, and an attempted organization of a corporation by persons to whom the charter is attempted to be assigned is void, and a corporation *de facto* cannot be created by user under such organization.

Appeal from circuit court, New York county.

Action by David Welch against the Old Dominion Mining & Railway Company, to recover for professional services rendered by him as an attorney at law. There was a verdict for plaintiff for $2,793.33, and from the judgment rendered thereon defendant appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Arnoux, Ritch & Woodford,* (*William H. Arnoux* and *Haley Fiske,* of counsel,) for appellants. *Arthur P. Hodgkins,* for respondent.

BARRETT, J.    The plea *nul tiel* corporation was here specially interposed. Upon the proofs, the learned judge at circuit held that a corporation *de facto,* though not *de jure,* had been established, and that the plaintiff might recover if the jury were satisfied upon the merits. In *Methodist, etc., Church* v. *Pickett,* 19 N. Y. 485, it was held that "two things are necessary to be shown in order to establish the existence of a corporation *de facto,* viz.: (1) The existence of a charter, or some law under which a corporation with the powers assumed might lawfully be created; and (2) a user by the party to the suit of the rights claimed to be conferred by such charter or law." Where an attempt is made in good faith to organize a corporation under general laws, followed by actual user, a defect in the proceedings or an irregularity in the organization will not avail parties who have contracted with it. *Eaton* v. *Aspinwall,* Id. 119; *Brouwer* v. *Appleby,* 1 Sandf. 158. User alone, however, will not suffice. People cannot create corporations merely by acting as such. There must at least be an organization under some existing charter or law. And such organization must be in good faith. Parties cannot take a charter with which they have no concern, and which belongs to other people, and effect a corporation *de facto* by a pretense of user thereunder. That is this case. The parties who, in this city, in the year 1886, attempted to organize a corporation under an act of the legislature of the state of Virginia passed in 1882, had not even a semblance of right. The corporation contemplated by that act had already, in the state of Virginia, in the year 1883, been duly organized by the original corporators, and that corporation has ever since regularly proceeded with its lawful business. It seems that shortly after the act of 1882 was passed one Gallagher intimated to some of the original corporators that he could sell the charter, and these gentlemen thereupon sent him an assignment in blank. Shortly afterwards the negotiation fell through, and the parties requested a return of the assignment. Gallagher said that he had destroyed it, as it was of no use to him, and no further notice was taken of the matter. This assignment, however, reappeared in the year 1886, in this city, with the name of one Clough inserted as assignee in the space which was originally blank, and "one dollar" inserted as the consideration. It was under this document, supplemented by various assignments from Clough and his assignees, that the pretended organization was here attempted. The assignment itself, even if it were not fraudulent, was wholly inoperative to convey the franchise. That could only be done by organizing the company, issuing the stock, and then transferring such stock to the purchasers. But the assignment was fraudulent, and under the circumstances even criminal. The organization attempted under its authority was a complete nullity. That organization was also void for other reasons. Under the laws of Virginia, a corporation must be organized within two years after the grant of its charter. Otherwise the grant is absolutely void. And this results, without legal proceedings of any kind, from mere operation of law. It appeared, too, by the testimony of a Virginia lawyer, who was a competent expert, that at the time when this organization was attempted in New York the laws of Virginia required such organization to be effected within that state.

After the sham and entirely futile organization in New York, the plaintiff was brought in as counsel by some gentlemen who were willing to advance money, and to resuscitate the company, provided the charter was valid. The

plaintiff advised that it was valid.  He subsequently discovered that in the year 1884 the legislature of Virginia changed the name of the corporation from the "London & Buckingham Construction & Mining Company" (which was the name given to it in the original act of 1882) to the "Flat-Top Coal Company."  Thereupon he proceeded to Richmond, and actually secured the passage of a bill (in May, 1887,) changing the name given to the company by the act of 1884 to the "Old Dominion Mining & Railway Company."  He did this with knowledge of the existence of the other company, which thus had its name changed without its consent by the gratuitous act of a stranger; for certainly this was the only legal effect of the plaintiff's extraordinary action.  And it was for these services, in the main, that the plaintiff sought compensation in this action.  Upon this state of facts the complaint should have been dismissed.  There was no corporation created by the attempted organization in this state in 1886, either *de jure* or *de facto*.  There was neither semblance of an existing charter nor user.  The only substantial user was the attempted organization, and the action advised by the plaintiff thereunder.  His opinion was expressly requested, not only on the validity of the original act of 1882, but upon the effect thereon of subsequent events.  The language of the written request called for his opinion "upon the validity of the first charter of our company, and every act or event that has happened, or that may hereafter occur, by legislation which has or could affect it."  Plainly, his clients put themselves in his hands, quite as a proposed purchaser of real estate does with regard to the title.  It was his duty to examine the title to the charter quite as much as to pass upon the validity of the act conferring it.  If he had done his duty in this regard, he would, or he certainly should, have ascertained the real facts, and advised his clients that they had no title to the charter, and that the attempted organization was founded upon fraud in fact, and nullity in law.  For this service he would have been entitled to proper compensation from the persons who employed him, but not from the defendant; for there was no such corporation, and he would or should have known that fact.  But after he discovered that an organization had been effected in Virginia in the year 1883, that the name of the company had been changed by the legislature of that state in 1884, and that the Virginia company had been ever since uninterruptedly prosecuting its legitimate business under such changed name, he had no excuse whatever for proceeding as he did; and the claim for services subsequently rendered, even as against the individuals who originally employed him, was, to say the least, wholly without merit.

There are several other doubtful questions in the case, notably the refusal to admit in evidence the papers upon which the order amending the answer was granted.  The original answer admitting the corporation had been put in by the plaintiff.  This must have had its natural effect upon the jury, entirely apart from the question (taken from them by the court) whether there was a corporation *de jure* or *de facto*.  It tended to throw doubt, from the defendant's own lips, upon the good faith of their present plea that they had been badly advised as to the validity of the charter.  They were consequently entitled to explain how they came to make the admission, and how they came to withdraw it.  The affidavits and papers used upon the motion for leave to withdraw the admission, and to be permitted to plead *nul tiel* corporation, were therefore, under the circumstances, proper for the consideration of the jury.  But we need not pursue the subject, or consider the other points presented by the appellants, for the reason that the questions already discussed go to the root of the action, and, so far as we can see on this evidence, must necessarily result in a dismissal of the complaint.  The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., concurs.  BARTLETT, J., concurs in the result.